UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAM CHRISTOPHER TAYLOR,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES INC, et al.,<br><br>Defendants. | Case No. 24-cv-02164-AGT<br><br>**ORDER ON (I) MOTION TO COMPEL ARBITRATION AND (II) MOTION FOR MORE DISCOVERY**<br><br>Re: Dkt. Nos. 12, 41 |

Uber Technologies Inc. and Rasier LLC (collectively, "Uber") seek to compel Adam Taylor to arbitrate his claims against them. Uber's "motion to compel arbitration is a non-dispositive motion," which the undersigned may resolve. *Patton v. Johnson*, 915 F.3d 827, 832 (1st Cir. 2019). Last year, the Court did resolve the motion, granting it. Dkt. 25. But on reconsideration, the Court vacated its order and permitted targeted discovery "related to whether Taylor consented to the arbitration agreement." Dkt. 33 at 1. Now with discovery complete, *see also* Part VI, *infra* (denying Taylor's request for more discovery), the Court considers the motion to compel anew, and grants it again.

## I.

Taylor says he never agreed to arbitrate his claims against Uber. When a party "challenge[s] the very existence of an agreement to arbitrate, the district court [is] required to address [that] challenge." *Ahlstrom v. DHI Mortg. Co.*, 21 F.4th 631, 635 (9th Cir. 2021). In doing so, the Court uses the summary judgment standard. *See Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021). If there's no genuine dispute that the parties agreed to arbitrate, the Court will order the parties to proceed with arbitration. If a genuine dispute exists, a trial on the agreement's existence will be held. *See* 9 U.S.C. § 4.

Taylor also makes other arguments against arbitration (e.g., unconscionability, waiver). *See* Dkt. 21 at 7–8. Prior to reconsideration, the Court held that if Taylor assented to the arbitration agreement, then the arbitrator would need to resolve his other challenges. *See* Dkt. 25 at 1–2 ("The agreement clearly and unmistakably delegates gateway issues of this sort to the arbitrator to decide.") (simplified). For the avoidance of doubt, the Court incorporates that holding here and will not address Taylor's other arguments further.

## II.

It is undisputed that Taylor created an account within Uber's Driver App, a phone app used by persons who want to offer rideshare services through Uber. It is also undisputed that on January 5, 2024, between 9:00 a.m. and 10:00 a.m. CST, Taylor used the app.

Taylor wasn't an Uber driver at the time; he still needed to complete a registration process. As part of that process, on the Driver App's terms-and-conditions page, he needed to click "Yes, I agree" twice below a list of Uber-drafted agreements. *See* Dkt. 30-1, Sauerwein Decl. ¶¶ 8–9. One of those agreements was the Rasier Platform Access Agreement (the "Rasier PAA"). Within the Rasier PAA was an arbitration agreement. *See* Dkt. 14-3.

Uber automatically records when any Driver App user clicks "Yes, I agree" twice below the listed agreements. Uber logs the date and time when the second click happens, plus the user's Driver ID. *See* Sauerwein Decl. ¶¶ 15, 17. Uber generated such a record for Taylor. It is dated January 5, 2024, 9:36:39 CST,[1] and lists Taylor's Driver ID. *See id.* ¶¶ 15, 17 & Ex. 4. It is undisputed that the Driver ID is Taylor's: the same ID appears next to his name and email address in several Uber background check reports, which Taylor attached to his complaint. *See* Dkt. 1-1 at 47, 58, 64. Also undisputed, the time stamp corresponds to a time when Taylor was using the App. *See* Dkt. 39-2, Taylor Dep. Tr. 74:3–9.

Uber has a record, then, kept in the ordinary course of business, reflecting that Taylor assented to the Rasier PAA. "[C]licking 'accept terms' qualifies as an electronic signature under federal and California law . . . ." *Kamath v. Coinbase, Inc.*, No. 23-CV-03533-CRB, 2024 WL 950163, at *5 (N.D. Cal. Mar. 5, 2024) (citing 15 U.S.C. § 7006(5); Cal. Civ. Code § 1633.2(h)). And "electronic signatures . . . are valid means of expressing assent to a contract." *Id.* (quoting another source) (citing Cal. Civ. Code § 1633.7(b)).

Uber's electronic record isn't new evidence. The company offered the same record with its original motion to compel, and the Court relied upon it in granting the motion. What prompted the Court to reconsider its decision were several screenshots Taylor submitted. He first filed them when opposing Uber's original motion to compel. But on reconsideration, he submitted them with metadata and a declaration confirming that he had taken the screenshots on his phone while logged into his Driver App account (addressing concerns the Court raised in its order granting Uber's original motion to compel). Together, the screenshots, metadata,

---

[1] Uber used Coordinated Universal Time (UTC), but the Court has converted UTC to Central Standard Time (CST) because Taylor was within the latter time zone on the date in question. *See* Dkt. 39-1, Ackert Decl. ¶ 17, Exs. F & G. CST is six hours behind UTC.

3

and declaration arguably indicated that, as of the date and time of Uber's electronic record, Taylor hadn't accepted the Rasier PAA.[2]

To determine if this dispute was genuine, *Hansen*, 1 F.4th at 672, and to allow Uber to examine the screenshots, the Court permitted targeted discovery. Dkt. 33. As detailed below, discovery revealed that, contrary to initial indications, Taylor's screenshots are consistent with Uber's electronic record. The screenshots don't conflict with Uber's record or support Taylor's claim that he didn't assent to the Rasier PAA.

## III.

The Court has organized Taylor's screenshots into three pairs. In each pair, the first screenshot shows a page within Taylor's Driver App account, and the second screenshot displays metadata from the first. Taylor captured the metadata by opening the first screenshot in each pair using a photo app on his phone; clicking on an information icon, which revealed the metadata; and taking a screenshot of the metadata (effectively a screenshot of a screenshot). *See* Taylor Dep. Tr. 53:4–56:10. The screenshots are labeled A through F below.

### A.

Screenshot A displays the Driver App's terms-and-conditions page within Taylor's account. Several agreements are listed as needing review and approval, with the Rasier PAA listed fourth. Screenshot B shows metadata associated with Screenshot A. The metadata, which appears in a black rectangle at the bottom of Screenshot B, reflects that Taylor took Screenshot A on January 5, 2024, at 9:36 a.m. CST.[3]

---

[2] Perhaps Taylor could have submitted his new evidence from the start. But because he isn't represented by counsel, the Court gave him the benefit of the doubt and considered his new evidence on reconsideration. *See* Civil L.R. 7-9.

[3] Screenshot B doesn't include a time zone, but Taylor testified that his phone was set to CST when he took the screenshots in question. *See* Dep. Tr. 52:2–4; 58:14–19; 63:1–4.

A.                          B.

 

Dkt. 22-3 at 2; Dkt. 26-3 at 2.

Uber's time stamp indicates that Taylor assented to the Rasier PAA on January 5, 2024, at 9:36:39 a.m. CST, the same day, hour, and minute when Taylor took Screenshot A. Screenshot A and its metadata (as displayed in Screenshot B) thus create some uncertainty. At almost the exact time when Uber says Taylor clicked "Yes, I agree" a second time, Screenshot A and its metadata indicate that Taylor had *not* clicked "Yes, I agree."

During discovery, Taylor produced his screenshots in .jpg format. Uber then asked Julian Ackert, a managing director at iDiscovery Solutions, Inc., who has extensive forensic analysis experience, to analyze the metadata. *See* Ackert Decl. ¶¶ 2–4, 13–16.

Using the .jpg files, Ackert identified the hour, minute, and *second* when Taylor took Screenshot A. This metadata is more precise than the metadata Taylor found using a photo

app on his phone, which had captured only the hour and minute when he took Screenshot A.

The .jpg metadata revealed that Taylor created Screenshot A at 9:36:05 a.m. CST, thirty-four seconds *before* he accepted the Rasier PAA, at 9:36:39 a.m. CST, based on Uber's time stamp. *See id.* ¶¶ 21–22, 25 & Ex. I. The .jpg metadata demonstrates, then, that Screenshot A and Uber's time stamp are consistent. Screenshot A and the .jpg metadata show that Taylor had yet to click "Yes, I agree" below the Rasier PAA at 9:36:05 a.m. CST, while Uber's time stamp reveals that half a minute later, Taylor clicked "Yes, I agree" twice.

Taylor hasn't offered any evidence to rebut the .jpg metadata, which debunks his assertion that Screenshot A is inconsistent with Uber's time stamp. If anything, Screenshot A and the .jpg metadata support Uber's position. They reveal that only seconds before the time at which Uber says Taylor clicked "Yes, I agree," Taylor was using the Driver App and had the terms-and-conditions page open on his phone.

**B.**

Taylor's next screenshot, Screenshot C, shows a Driver App page titled "Recommended for you." Below that title is a pink rectangular box subtitled "Required actions." The box lists one required action: "Review updates to terms and conditions."

Screenshot D shows metadata for Screenshot C, which Taylor found using his phone's photo app. The metadata reflects that Taylor took Screenshot C on January 5, 2024, at 9:36 a.m. CST, the same day, hour, and minute when he took Screenshot A and when Uber time-stamped his acceptance of the Rasier PAA.

\\

\\

C.   D.



Dkt. 22-1 at 2; Dkt. 26-1 at 2.

Screenshot C doesn't mention the Rasier PAA. Still, Taylor testified that when he clicked on the link to "Review updates to terms and conditions," the Driver App rerouted him to the terms-and-conditions page, where the Rasier PAA was listed as an agreement still needing his approval. *See* Dep. Tr. 56:11–57:11. Similar to Screenshot A, then, Screenshot C, in conjunction with only Taylor's metadata and testimony, arguably indicates that Taylor didn't accept the Rasier PAA at the time when Uber recorded that he did.

Ackert's forensic analysis of the .jpg metadata for Screenshot C shed light on the apparent conflict, revealing again that there is no inconsistency after all.

The .jpg metadata shows that Taylor created Screenshot C at 9:36:11 a.m. CST, six seconds after he took Screenshot A and twenty-eight seconds *before* he accepted the Rasier PAA, at 9:36:39 a.m. CST, according to Uber's time stamp. *See* Ackert Decl. ¶¶ 21, 23, 25

7

& Ex. J. There is no conflict, then, between Screenshot C and Uber's time stamp. Screenshot C preceded the time stamp, and Taylor hasn't suggested that he couldn't have created Screenshot C and clicked "Yes, I agree" twice within 28 seconds.

### C.

Lastly, Screenshot E shows a page within the Driver App titled "Vehicle Marketplace." The page displays a car for rent, but a text box states, "You are currently ineligible to rent a car because you have not completed the driver activation or reactivation process."

Screenshot F displays the photo app metadata for Screenshot E. The metadata reflects that Taylor took Screenshot E on January 5, 2024, at 9:42 a.m. CST, six minutes after Uber time-stamped his acceptance of the Rasier PAA.

E.     F.



Dkt. 22-2 at 2; Dkt. 26-2 at 2.

Taylor argues that the reason he hadn't completed the driver activation process was because he hadn't clicked "Yes, I agree" below the Rasier PAA. If that were true, Screenshots E and F would support his case. They would show that as of 9:42 a.m. CST, he hadn't assented to the Rasier PAA. They would also conflict with Uber's time stamp, which indicates that Taylor assented to the Rasier PAA at 9:36:39 a.m. CST.

The problem for Taylor is that no evidence supports his initial premise. He only speculates and argues that the reason he hadn't completed the driver activation process was because he hadn't clicked "Yes, I agree" below the Rasier PAA.

In contrast, Uber's evidence reveals that Taylor hadn't completed the driver activation process for reasons unrelated to the Rasier PAA. He needed to upload "a valid driver's license, valid proof of valid insurance and vehicle, and a profile picture." Sauerwein Decl. ¶ 21. He didn't complete those steps before creating Screenshot E. *See id.* ¶¶ 6, 20–21.

Taylor hasn't offered any contrary evidence. No evidence indicates that, before he took Screenshot E, he had submitted a valid driver's license, proof of insurance, or a profile picture. Nor has Taylor offered evidence to rebut Uber's contention that he needed to upload these documents to complete the driver activation process.

With supporting evidence, Uber has explained why Taylor didn't finish the activation process. His failure to complete that process had nothing to do with the Rasier PAA. Screenshots E and F, then, don't support Taylor's position. Together with Uber's evidence, these screenshots indicate only that as of 9:42 a.m. CST, on January 5, 2024, Taylor hadn't submitted a valid driver's license, proof of insurance, and a profile picture. They don't support the inference that Taylor hadn't accepted the Rasier PAA.

* * *

None of Taylor's screenshots create a genuine dispute about whether he assented to the Rasier PAA. He created Screenshots A and C before accepting the Rasier PAA. Screenshot E shows only that he wasn't eligible to drive for Uber because he hadn't submitted required paperwork. And Screenshots B, D, and F only capture metadata from the other screenshots, which isn't inconsistent with Uber's time stamp.

Taylor's screenshots don't create a triable issue.

### IV.

Other than his screenshots, Taylor's only evidence is his testimony—that he "never agreed to [arbitrate]." Dkt. 22, Taylor Decl. ¶ 1; *accord* Dkt. 42, Taylor Decl. ¶ 2(a). His testimony is uncorroborated and conclusory and doesn't create a genuine dispute. *See Mullen v. Chaac Pizza Midwest, LLC*, 2022 WL 673187, at *5 (S.D. Ohio Mar. 7, 2022) ("[W]hen the moving party has presented evidence of the process to assent to an arbitration agreement as well as proof of the agreement, a self-serving affidavit disputing assent cannot create a genuine issue of material fact."); *Sundquist v. Ubiquity, Inc.*, 2017 WL 3721475, at *4 (S.D. Cal. Jan. 17, 2017) (granting motion to compel arbitration after concluding that plaintiff's "self-serving, conclusory declaration" didn't "raise a material question of fact").

### V.

Taylor also insists that the Court shouldn't compel arbitration because Uber's electronic record is inaccurate and inauthentic. He hasn't offered evidence to prove this claim, and Uber's evidence supports the opposite conclusion.

- Uber reviewed its "engineering team's dashboard with regard to system errors that could have impacted the recording of [Taylor's] acceptance." Dkt. 39-3, Linfoot Decl. ¶ 14. No errors were recorded. *See id.* ¶ 15.

- Uber uses latency protocols to ensure time-stamp accuracy. If there's a delay of more than one second between when an App user clicks "Yes, I agree" and when Uber's system registers that act, the system will time out and not record the user's assent. *See id.* ¶¶ 10–11. The system didn't time out in Taylor's case; it recorded a time stamp. *See id.* ¶ 12.

- Uber required Taylor to use a username and password to access his account. *See* Sauerwein Decl. ¶ 7. Taylor didn't give his username or password to another person, Dep. Tr. 32:23–33:4; he didn't allow anyone to access his account without his permission, *id.* at 49:22–50:2; and he was logged into his account when Uber recorded his assent, *id.* at 74:3–9.

Only one conclusion follows from this record: Uber's electronic record of when Taylor accepted the Rasier PAA is accurate and authentic.

## VI.

Finally, Taylor asks for more discovery. He argues that Uber stonewalled his attempts to obtain discovery and didn't produce "any logs, metadata, or records demonstrating my activity before or after the timestamp." Dkt. 44-2, Taylor Decl. ¶ 5; *see also* Dkt. 41.

The summary judgment standard applies to the arbitrability issue, so the Court construes Taylor's request as a motion for more discovery under Federal Rule of Civil Procedure 56(d). Under that rule, a party seeking more discovery must show that "(1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 678 (9th Cir. 2018) (simplified).

Taylor hasn't met this standard. He speculates that more discovery would help his

position, but that's not enough. *See id.* ("[F]or purposes of a Rule 56(d) request, the evidence sought must be more than the object of pure speculation.") (simplified); *Palmer v. HSBC Bank*, No. 23-15226, 2024 WL 2287199, at *1 (9th Cir. May 21, 2024) ("Mrs. Palmer failed to meet [Rule 56(d)'s] burden because she merely speculated that the sought-after testimony and documents might contradict the evidence already before the district court.").

Taylor's discovery requests were also untimely. He served written requests less than a month before discovery closed. *See* Dkt. 41 at 2–5. As a result, Uber's responses weren't due until after the cut-off. *See* Fed. R. Civ. P. 33(b)(2), 34(b)(2)(A), 36(a)(3). "Discovery requests that call for responses . . . after the applicable discovery cut-off are not enforceable, except by order of the Court for good cause shown." Civil L.R. 37-3.

Taylor says "heightened anxiety and [a] decrease in executive function[ing]" prevented him from serving timely requests. Dkt. 41-3 (doctor's note). The Court isn't convinced. Taylor has actively participated in the case—responding to written discovery, sitting for a deposition, filing multiple motions—and has the capacity to meet deadlines.

Taylor's request for more discovery is denied. Taylor also seeks discovery sanctions. *See* Dkt. 41 at 2. That request is denied, too.

\\

### VII.

In conclusion, the Court finds that the "making of the agreement for arbitration" isn't genuinely in dispute. 9 U.S.C. § 4. When prompted to accept Uber's arbitration agreement, Taylor clicked "Yes, I agree." Uber's motion to compel arbitration is therefore granted.

Further proceedings are stayed until arbitration ends. *See Smith v. Spizzirri*, 601 U.S. 472, 478–79 (2024). The parties must file a joint status report every 180 days to update the Court on the arbitration status. The first status report is due on November 17, 2025.

**IT IS SO ORDERED.**

Dated: May 22, 2025

Alex G. Tse
United States Magistrate Judge